IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

3    ----------------------------------------------------------------

4    UNITED STATES OF AMERICA,          Case No. 13-CR-00004-J

5          Plaintiff,                   Cheyenne, Wyoming
                                        July 26, 2013
6          vs.                          3:04 p.m.

7    SIGIFREDO MOLINA VARELA,
     aka SIGI,
8
           Defendant.                   **CERTIFIED COPY**
9
     ----------------------------------------------------------------
10

11

12              TRANSCRIPT OF SENTENCING PROCEEDINGS

13            BEFORE THE HONORABLE ALAN B. JOHNSON
                  UNITED STATES DISTRICT JUDGE
14
     APPEARANCES:
15
     For the Plaintiff:       MR. STUART S. HEALY III
16                            Assistant United States Attorney
                              UNITED STATES ATTORNEY'S OFFICE
17                            P.O. Box 668
                              Cheyenne, WY 82003-0668
18
     For the Defendant:       MR. THOMAS B. JUBIN
19                            Attorney at Law
                              JUBIN & ZERGA, LLC
20                            2614 Pioneer Avenue
                              P.O. Box 943
21                            Cheyenne, WY 82003-0943

22
     Court Reporter:          JULIE H. THOMAS, RMR, CRR
23                            2120 Capitol Avenue, Room 2228
                              Cheyenne, WY 82001
24                            (307)778-0078   CA CSR No. 9162

25

     Proceedings recorded by mechanical stenography,
     transcript produced by computer.

1                              I N D E X

2

OBJECTIONS TO PRESENTENCE REPORT                        PAGE

3
        Mr. Healy                                          3
4       Finding of the Court                               9
        Mr. Jubin                                         11
5


6
MOTIONS                                                 PAGE
7
Defendant Renews All Prior Objections
8       Mr. Jubin                                         24
        The Court persists in its previous rulings        24
9


10
JUDGMENT AND SENTENCE                                   PAGE
11
Mr. Jubin                                                 12
12 Allocution of the Defendant                             14
Granting of Variance                                     18
13 Judgment and Sentence of the Court                      18

14

15

16

17

18

19

20

21

22

23

24

25

1         (Proceedings commenced 3:04 p.m.,

2         July 26, 2013.)

3              THE COURT:  Mr. Healy.

4              MR. HEALY:  Thank you, Your Honor.  This is the

5    sentencing in United States of America versus Sigifredo Molina

6    Varela, Docket No. 13-CR-04-02J.  The defendant was indicted

7    along with his codefendants on January 15th, 2013.  He was

8    arrested, made his initial appearance, and at his arraignment

9    on January 23rd of this year pled not guilty.  He stood on

10   that plea during a jury trial lasting between May 8th and

11   May 13th of this year.  He was ultimately found guilty of the

12   two counts in the Indictment charged against him, that is,

13   Count 1, conspiracy to possess with intent to distribute and

14   distribution of methamphetamine, a (b)(1)(A) violation, and

15   Count 2, possessing a firearm in furtherance of a drug felony.

16             The presentence report was prepared.  On page 10 the

17   probation officer found a base offense level of 36.  As I

18   explained in the earlier hearing with Jacqueline Garcia, I

19   think that that's a completely legitimate finding based on the

20   information that was compiled about Mr. Molina prior to the

21   trial, but we do not have an agent here to testify today

22   because I think that, based on the testimony of the witnesses

23   at the trial, the amount that is most reasonable is between

24   1.5 and 5 kilograms -- let me just double-check -- yeah, 1.5

25   and 5 kilograms, amounting to a base offense level of 34 and a

1    total offense level of 34.

2          The defendant's criminal history is set out on

3    page 11 and starting at paragraph 35.  He's been arrested on

4    several occasions, but those arrests are fairly old.  His most

5    recent arrest is a theft by unlawful taking that he was

6    convicted of in March of 2002.  He received one point for

7    that, a misdemeanor, which amounts to a Criminal History

8    Category of I at paragraph 41.

9          Paragraph 66 should be adjusted, the Government

10   agrees with Mr. Jubin's sentencing memorandum or his

11   objections, to a guideline imprisonment range of 151 to 188

12   months.  60 months consecutive must be imposed on Count 2.

13   The Government agrees with the conditions, special conditions

14   of supervised release set out in paragraph 71 if the defendant

15   is not deported upon completion of his term because he is a

16   resident legal alien.

17         Probation -- supervised release is mandated of at

18   least five years.  Fines -- which incidentally, Your Honor, I

19   would be interested in reading that Ninth Circuit opinion you

20   referred to in the last hearing.  Fines are set forth in

21   paragraph 75 through 77.  There will be a $200 special

22   assessment, $100 for each count.

23         Thank you, Your Honor.

24         THE COURT:  Thank you, Mr. Healy.

25         Mr. Jubin.

1           MR. JUBIN:  May it please the Court.  Your Honor, do

2   you want me to just address the presentence report at this

3   time?

4           THE COURT:  Why don't we have your client come

5   forward --

6           MR. JUBIN:  Okay.

7           THE COURT:  -- raise his right hand.

8           COURTROOM DEPUTY:  Sir, would you please raise your

9   right hand as best you can.

10      (The defendant was sworn.)

11          COURTROOM DEPUTY:  Thank you.

12          THE COURT:  Please state your full name.

13          THE DEFENDANT:  My name is Sigifredo Molina Varela.

14          THE COURT:  And your age?

15          THE DEFENDANT:  41.

16          THE COURT:  As I understand it, you have some junior

17  college.  Is that correct?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And you are able to read and write the

20  English language?

21          THE DEFENDANT:  I can read, not write, not spell very

22  good.

23          THE COURT:  All right.

24          THE DEFENDANT:  But I can read.

25          THE COURT:  All right.  Are you under the influence

1    of any drug, alcohol, pill, or medication today?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  Your usual occupation has been as an

4    electrician; is that correct?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And I think one of your employers was

7    Pole Mountain.

8          THE DEFENDANT:  Yes.

9          THE COURT:  And you also worked on a hospital at

10   Saint Stephens.

11         THE DEFENDANT:  Uh, it was a high school.

12         THE COURT:  High school, I'm sorry.  I didn't

13   remember.

14         Tell me, have you received a copy of the presentence

15   investigation report?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  And have you read that report?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  And have you been able to discuss it with

20   Mr. Jubin, your attorney?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  And are you satisfied with the work that

23   he's doing for you in that regard?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  I want to tell you in addition to what

 1  Mr. Jubin has submitted to the Court, which is a response to

 2  the presentence investigation report in your case, I have also

 3  considered for you a series of letters that came really

 4  through Miss Garcia's case, because most of them mention you

 5  just as they mention her, and you need to know what is out

 6  there that I looked at.  There was a letter from Jenna

 7  Muniz --

 8          THE DEFENDANT:  Yes.

 9          THE COURT:  --  a friend of both of you, through son

10  David and daughter Adrianna.

11          A letter from Lacey J. Cole that was written in

12  regard to both of you.  I think she's known you for about six

13  years and knows you to be loving and caring to your children

14  and to everyone around you and that you would take in anybody

15  who needed a place to stay and treat them as your own and that

16  you -- she says about you that you are a hard-working man who

17  took care of his family and made sure that they were taken

18  care of, and she says about Jackie that she could talk to her

19  more than she could talk to her own mother.

20          A letter from Angela Garcia, who says she's known you

21  for 23 years and that you have been a part of her life and

22  came into her life when her brother Felix passed away from a

23  bad heart and the family was abandoned by her father.  He

24  cared -- it says you cared and provided for the family as if

25  it were your own, gave us everything we needed and much more.

1    I didn't see him as my stepfather.  I see him as my father as

2    he was a fatherly figure.  And she goes on to say nice things

3    about you.

4            Wendy Molina has written really a little note and

5    then a letter in July describing the family, that Jackie was

6    the homemaker, you were the breadwinner, and the three oldest

7    children are now adults raising their own families, and

8    expressing concern for the three youngest boys, the

9    16-year-old and the eight- and six-year-old, the two youngest

10   living with their sister Angela.  And that letter is from

11   Dawn, I think it's Wilhorn or Withorn.

12           A letter from Wendy Molina really saying that she has

13   known Jackie and you since she has memory and considers you to

14   be good parents in the way you treated the children.

15           A letter from Shawn Draper, again along the same,

16   same line in his letter.

17           So those are what I've seen.  I don't know if you've

18   seen those or not, Mr. Jubin.

19           MR. JUBIN:  Your Honor, I personally have not.  I

20   spoke with Angela Garcia, who was assembling some of these

21   things, and she indicated she had sent them to Mr. Fleener,

22   and I had requested they be sent to me, but somehow they

23   didn't get to me.  But I was going to ask the Court to

24   consider those matters as they may inure to Mr. Molina's

25   benefit that he received in Jackie Garcia's case and to the

1  extent, for record purposes, to the extent it's necessary to

2  make sure that those letters find their way into the file as

3  pertinent to Mr. Molina as well.

4       THE COURT:  Well, I could tell, I could tell when I

5  read them that they applied as much to your client as they did

6  to Mr. Fleener's client.

7       MR. JUBIN:  And Angela Garcia had told me that they

8  were written on behalf of both.  They were simply sent to

9  Mr. Fleener rather than to me.

10       THE COURT:  Well, they were somewhat unusual in that

11  they weren't just letters from family members but encompassed

12  others as well.  And as I, as I mentioned at the sentencing of

13  Miss Garcia, we all saw it, that both Mr. Carothers and

14  Miss Blankenship, although they testified for the Government,

15  did so with some reluctance and, of course, with a feeling of

16  loyalty towards Mr. Molina and Ms. Garcia.  It certainly

17  didn't make them happy to have to provide that testimony.

18       The first thing that I must do is to calculate the

19  appropriate guideline to apply in this case.  I agree with

20  Mr. Healy and I agree with you, after reading your response to

21  the presentence report and the analysis that you went to of

22  the trial language -- or the testimony at trial which

23  refreshed the Court and was helpful, that appropriate base

24  offense level in this case would be level 34 based upon the

25  drug quantity as developed during trial.  Now, I agree with

 1   Mr. Healy; that's a loose figure.  I believe that there's

 2   dabbling prior to the conspiracy in methamphetamine.  It

 3   started probably not before but certainly it became very

 4   problematic after the tragic loss of their daughter and

 5   continued on until this conspiracy was the result.  So I think

 6   the probation officer is probably well within, within their

 7   purview in finding a 36, but I think the stronger evidence is

 8   what we heard at trial in this case and will use that to avoid

 9   speculation.

10          I also find, as is evident from the presentence

11   investigation report in this case, that the defendant

12   certainly early on had some turbulence in his life, mainly

13   repeated charges of driving under the influence of alcohol,

14   and there were some assaultive behavior back in 1993 and even

15   as recently as 1998, none of which was counted in the criminal

16   history in this matter, but alcohol was an issue at a time for

17   Mr. Molina.  And I think the theft count in 2002, I'm not sure

18   if that is the same charge that Miss Garcia was involved in, I

19   think maybe it is a year later, but very similar to what

20   Miss Garcia had.  But after that until this offense occurred

21   there was nothing that I'm seeing in the presentence

22   investigation report.

23          As noted here by counsel for the Government, that

24   would yield a sentencing range of 151 months to 188 months

25   confinement under the guideline with a 60-month consecutive

 1   sentence on Count 2 that would be imposed.  Supervised release

 2   five years to life, and Count 2 a sentence of supervised

 3   release of not more than five years.  The fine range is a

 4   maximum of $10 million for Count 1, $250,000 for Count 2.

 5   Special assessment of $100 for each count that is mandatory or

 6   $200.  And the range is $25,000 by guideline to 10 million.

 7          I would be pleased to hear your comments about the

 8   presentence investigation report.

 9          MR. JUBIN:  Thank you, Your Honor.  Given the Court's

10   findings, obviously I have nothing more to say about the

11   quantity, the drug quantity calculation.  I would note that

12   the presentence report objection response pleading, I filed

13   that July 8th.  I think the presentence report indicates I

14   filed it July 28th, and I think that's because -- which is two

15   days from now, and I think that's because I have the wrong

16   date right above my signature on document 307, that specific

17   pleading.  So that was filed on July 8th.

18          The other thing I would note is that the presentence

19   report assumed sentencing would occur on July 18th.  Today is

20   July 26th of 2013, and 184 days credit based on the

21   then-assumed sentencing date ought to be 192 days based upon

22   today's date.

23          I don't have any other comments about the presentence

24   report other than what's in my written filing, but I would be

25   happy to continue to address other issues.

 1          THE COURT:  Very well.  I would be pleased to hear

 2   from you, and then I would like to hear from your client.

 3          MR. JUBIN:  Thank you.  You know, I am quite aware

 4   and Mr. Molina is quite aware that the statutory mandatory

 5   minimum really ties the Court's hands in this case.  There's a

 6   10-year statutory mandatory sentence of imprisonment on the

 7   drug conspiracy charge and a consecutive five-year mandatory

 8   imprisonment on the 924(c).  I guess what really stands out

 9   here is that drugs can really consume people who are otherwise

10   pretty decent human beings.  As those letters alluded to,

11   Mr. Molina and Jackie Garcia took in a lot of young people and

12   took in people who didn't have any other place to go.  They

13   were pretty good people.

14          Sigi Molina spent a good portion of his life as a

15   hard worker.  Early on he was somebody who was, you know, out

16   picking vegetables in the fields, and that's hard, hard work.

17   And then he was an electrician, and he was gone traveling away

18   from his family at times that were sacrifices that he did to

19   provide for them.  And to see how drugs have torn that family

20   apart has been a hard thing to, to really watch.  And you see

21   it, I guess, in this role as lawyers and you, as a judge, with

22   some frequency, and it's a real tragedy.  And I guess part of

23   the real -- the way it became such a huge problem was the

24   tragic loss of Adrianna, who was their 15-year-old daughter,

25   and trying to cope with that.  To try to escape the

1   devastation of that loss is something that we can really

2   hardly fathom.  And that's talked about in the presentence

3   report at paragraphs 56 and 58.

4           So here we have somebody who is not afraid of hard

5   work but who went through some, some pretty tough times and

6   certainly hasn't been a perfectly law-abiding citizen.  I

7   think the one criminal history point that does count in his

8   case involved a rented motel room where somebody else made off

9   with a lamp, but it was rented under his name, so he ended up

10  with the, the forfeiting and the conviction.  I think that's

11  what that particular conviction is about.

12          Obviously the presentence report says that Mr. Molina

13  has never participated in any kind of drug treatment.  He

14  obviously needs that.  I would, like for Ms. Garcia, I would

15  strongly urge the Court to recommend or give a strong

16  recommendation that Mr. Molina obtain drug treatment.  I know

17  that he's, he's not a citizen of this country.  He's been a

18  long-term legal resident, and as we all know the current law

19  says that when he's done with his sentence he is going to be

20  deported.  And I hope that doesn't interfere with his ability

21  to get that treatment.  He needs that treatment wherever he is

22  going to be living.

23          So I guess -- Mr. Molina has support.  He has some of

24  his family here.  You can see his brother Manuel and I believe

25  Wendy, who you read some letters from.  As well as his sister

1  Angela, who also wrote a letter, has custody of Sigi and

2  Jackie's children, and they couldn't bear to be here to watch

3  this happen to their parents, so they didn't come.  They had

4  planned to come, but it was just too hard.

5          THE COURT:  I understand.

6          MR. JUBIN:  So I don't expect Mr. Molina will be

7  saying anything to you because he hasn't waived his right of

8  appeal and for those obvious reasons, but he may say something

9  pertaining to his family.  And I would certainly leave it in

10  the Court's hands.  The 180 months that the statutes require

11  is certainly more than is necessary in this case for somebody

12  who's Criminal History Category I.  I don't mean to diminish

13  the seriousness of the offense, but for somebody who is

14  standing before the Court for the first time in these kinds of

15  circumstances, it's an awfully steep price to pay,

16  particularly when you look at the added what can only be

17  deemed a punishment, the likely mandatory deportation that he

18  is going to face.  So for those reasons I would ask the Court

19  to impose the statutory mandatory minimum.  It is certainly

20  sufficient to meet the goals and principles of 3553(a).

21          THE COURT:  Mr. Molina, I would be pleased to hear

22  anything that you wish to say this afternoon.

23          THE DEFENDANT:  I just want to say sorry.  I let my

24  kids down.

25          MR. JUBIN:  Nothing further, Your Honor.

1          THE COURT:  Very well.  Mr. Jubin -- I'm sorry,

2   Mr. Healy.

3          MR. HEALY:  Nothing further from the Government, Your

4   Honor.  Thank you.

5          THE COURT:  There are arguments that could be

6   constructed.  There are always arguments that can be

7   constructed to treat Mr. Molina differently than Ms. Garcia,

8   but I've read both of these presentence investigation reports,

9   and it just appears that me that they were partners in every

10  sense of the word in what was going on.  Perhaps Sigi dealt

11  with the men typically, and Jacqueline certainly dealt with

12  the women, although I think she dealt with Carothers as well,

13  as kind of a mother figure for a boy who didn't have a mother.

14  His mother was in jail, and they took him in.

15          Mr. Molina is 41 years old.  Why Mr. Molina and

16  Miss Garcia decided to risk trial before a jury in this case

17  will forever be a puzzle to the Court.  Nevertheless, they

18  did, and the consequences of the minimum mandatory sentencing

19  certainly are upon them now.  The question is whether or not

20  there should be -- whether or not a variance is appropriate.

21  I find that it is for several reasons.  One is the history of

22  this case, the circumstances that at least started Mr. Molina

23  down this path, the tragic loss of his, his daughter in 2006,

24  and the use of methamphetamine and illegal substances to

25  self-medicate, deal with the pain of that loss, which is

1    unremitting, would not stop, and to this day he has been able

2    to discuss it with the probation officer.  It was a terrible

3    event for both Miss Garcia and Mr. Molina.

4            As I pointed out to Miss Garcia, it does not excuse

5    what followed, that is, the distribution and the injury that

6    occurred or was allowed to occur by virtue of the conspiracy,

7    and that is sweeping up into it, although they were perfectly

8    willing participants, Kyle Carothers, who I have found

9    throughout to be a person of outstanding potential in his life

10   if he can stay sober and focused, other defendants in the

11   case, the very sad and mixed up Heidi Blankenship, another

12   able person Whitney Dawn Rose whose own life was very

13   turbulent, her association with all of this, and the ripples

14   of all of it go out.

15           We sentenced a week ago or so Michael Adams, who

16   there was a connection with, who was a drug source really at

17   one point who was involved in a senseless burglary and tried

18   to hide a gun as the police chased him, and that gun

19   ultimately ended up in the hands of an eight-year-old who shot

20   his friend and killed him by accident.  Criminal conduct has

21   consequences, and those consequences are sad, and my guess is

22   Mr. Molina would have understood the pain expressed by those

23   people who lost their eight-year-old boy, the last boy in

24   their family, the only boy in their family, when they came to

25   court.  Probably better than anybody here in this room

 1  Mr. Molina would understand.

 2          Without question the minimum mandatory sentence in

 3  this case, in my mind, and this is me speaking, for the

 4  conspiracy is a removal sentence.  Anything above 10 years

 5  seems to me is a removal sentence.  It incapacitates an

 6  individual and creates a huge barrier to an individual pulling

 7  their life together and moving forward in terms of income,

 8  job, education, training, anything.  Whatever they take from

 9  prison is what they will have and whatever they are able to

10  build again, but 10 years is a long time.  And here there is

11  an additional 60 months, five years, on top, consecutive.  15

12  years is certainly an incapacitation sentence.

13          Mr. Molina by all accounts has had lengthy periods of

14  hard work and been productive.  He is unusual as a person who

15  has come across the border from Chihuahua and has gone to

16  school and has developed a trade as an electrician.  Not many

17  do.  So he's valuable in terms of the income that he could

18  produce, and I would note that.

19          I'd note that the criminal conduct evolved from drug

20  use and abuse to a conspiracy to obtain more, more drugs and

21  money, because meaningful employment, other than helping out

22  the landlord, really had pretty much ended at the end of this,

23  this entire thing and kind of collapsed upon itself.  And make

24  no mistake, I believe that harm, harm followed, not only to

25  Mr. Molina and Miss Garcia but to a lot of others as well as

 1   others that we don't -- whose faces aren't here.  Those were

 2   the customers in Gillette who are probably headed in a bad

 3   direction as we speak.

 4         A variance of three levels will be imposed in this

 5   matter or granted which would place Mr. Molina in a level 31,

 6   Criminal History Category I.

 7         Pursuant to the Sentencing Reform Act of 1984 and

 8   those factors enumerated in 18 United States Code Section

 9   3553(a), it is the judgment and sentence of the Court that the

10   defendant, Sigifredo Molina Varela, is hereby sentenced to a

11   term of 120 months' imprisonment as to Count 1 and 60 months'

12   imprisonment as to Count 2 to be served consecutively as to

13   Count 1 in the custody of the Bureau of Prisons.

14         Upon his release from imprisonment defendant shall be

15   placed on supervised release for five years as to Counts 1 and

16   2 to be served concurrently.  That is, the supervised release

17   terms to be served concurrently.  Within 72 hours of release

18   from custody of the Bureau of Prisons defendant shall report

19   in person to the Probation Office in the District to which he

20   is released should he not be deported.

21         While on supervised release defendant shall comply

22   with the following mandatory and standard conditions --

23   defendant shall comply with the mandatory and standard

24   conditions adopted by this Court and shall comply with the

25   following special conditions.

1          Defendant shall participate in and successfully

2     complete substance abuse treatment in a program approved by

3     the U.S. probation officer, abiding by the rules,

4     requirements, and conditions of the treatment program.  He

5     shall not discontinue treatment without permission of the

6     probation officer.  This condition is imposed because the

7     Court agrees with the probation officer that there

8     is -- Mr. Molina suffers from a serious drug addiction and

9     would benefit from treatment.

10          Defendant shall submit to drug and alcohol testing as

11     directed by the probation officer, complying with specific

12     copays should he fail to comply with drug testing.  The

13     testing component that's imposed by the Court is imposed for

14     the purpose of giving credibility to the program of treatment,

15     to inform the Court if the defendant is slipping, and to

16     inform the probation officer if there is a slip so that it may

17     be addressed and dealt with and an increased or more intense

18     form of treatment instituted.  Also should it be necessary to

19     impose a sanction, it would establish those circumstances.

20          As a component of his treatment and testing he shall

21     pay a one-time fee of $250 to defray the costs of treatment

22     and/or drug testing by cashier's -- by money order or

23     cashier's check to the Clerk of the District Court here in

24     Cheyenne.

25          Defendant shall refrain from any use or possession of

1    alcohol or other intoxicants, including over-the-counter

2    medications used contrary to the recommended dosage or the

3    intentional inhalation of any substance, prescribed or

4    otherwise, without the permission of the U.S. probation

5    officer.  Additionally, defendant shall not enter

6    establishments whose primary income is derived from the sale

7    of alcohol.  This condition simply urges that the defendant

8    not substitute another, another addiction for the

9    methamphetamine addiction, and we will test to determine

10   compliance.

11        Defendant shall submit his person, residence, storage

12   facility, office, vehicle to a search at a reasonable time in

13   a reasonable manner based upon reasonable suspicion of

14   contraband or evidence of a violation of a condition of

15   supervised release.

16        The defendant shall participate in a cognitive

17   behavioral treatment regimen.  As indicated here, journaling

18   probably is not a good idea since he does not have a skill as

19   a writer.  We'll leave that up to the probation officer.

20   However, this condition is imposed because it is helpful to

21   this defendant to have the cognitive behavioral treatment

22   regimen which will help him to recognize and make change and

23   institute change in his life, recognizing where his use of

24   methamphetamine allowed the -- how it changed his thinking and

25   allowed him to do things against the law that he probably

 1   would have never have done had he been the sober, hardworking

 2   man that he had been before.

 3            MR. JUBIN:  Your Honor, I might mention he can write,

 4   just in Spanish, not in English.

 5            THE COURT:  I'm not sure the probation officer could

 6   read it or the treater.

 7            Should defendant be deported upon completion of his

 8   term of imprisonment, he shall not illegally reenter the

 9   United States.

10            The Court finds the defendant does not have the

11   ability to pay a fine within the guideline range but is able

12   to pay a reduced fine of $800, due immediately, inclusive of

13   penalties and interest if applicable.  It is ordered that the

14   defendant shall pay a special assessment fee in the amount of

15   $200 which shall be due immediately.  Payments for monetary

16   obligations shall be made payable by cashier's check or money

17   order to the Clerk of the District Court in Cheyenne.

18   Defendant shall participate in the Inmate Financial

19   Responsibility Program to pay his monetary obligations.  He

20   shall pay all financial obligations immediately.  Any amount

21   not paid immediately or through the Bureau of Prisons

22   responsibility program shall be paid commencing 60 days after

23   his release from confinement in monthly installments of not

24   less than $25 or 10 percent of his gross monthly income,

25   whichever is greater.  All monetary payments shall be

 1  satisfied not less than 60 days prior to the expiration of the

 2  term of supervised release.

 3          There are no dismissed counts to be considered.

 4          I would advise the defendant that he has 14 days from

 5  the date of entry of judgment in this case to file a notice of

 6  appeal should he wish to appeal the judgment and sentence in

 7  this matter.  In any event, he should confer and consult with

 8  his attorney, Mr. Jubin, in deciding whether he wishes to

 9  appeal.  If he should not, if he decides not to file a notice

10  of appeal and no notice of appeal is filed within 14 days, he

11  would likely lose his right to appeal the judgment and

12  sentence of the Court.

13          I want to ask and inquire now, does the defendant

14  wish to have a recommendation?  I want to tell him that the

15  Government has informed the Bureau of Prisons that he should

16  be separated from other defendants in this case, which may

17  affect his classification or location, but I'm certainly

18  willing to make a statement.

19          MR. JUBIN:  If I may have a moment, Your Honor.

20      (The defendant and counsel consult.)

21          MR. JUBIN:  Your Honor, in discussing this with

22  Mr. Molina, I think his preference is obviously to be close to

23  his family and his children so they can visit him.  I think

24  some of them are currently residing in Grand Island --

25          THE DEFENDANT:  Grand Island.

1    MR. JUBIN:  -- Nebraska.  I don't know, perhaps

2    Yankton, South Dakota, might be the closest facility to that

3    that I can think of.

4         THE COURT:  I don't know if he'd qualify for Yankton.

5    My guess is no.

6         MR. JUBIN:  Is that a camp only?

7         THE COURT:  Yeah, I think so, and because of the

8    firearm.

9         MR. JUBIN:  Right.  Well, I guess the request then

10   would be to --

11        THE COURT:  Maybe Oxford or somewhere like that.

12        MR. JUBIN:  -- to consider a location that is

13   consistent with his security classification that's as close to

14   Grand Island, Nebraska, where his children reside.

15        THE COURT:  The Court will make that recommendation

16   in this matter.  I can't guarantee where you will be placed,

17   Mr. Molina, but I will make that recommendation.

18        I strongly recommend in this case that, if possible,

19   the defendant be afforded the opportunity to participate in

20   the residential drug abuse treatment program.  You know, the

21   unfortunate thing about your situation, it seems to me, as a

22   person who is likely to be deported, is that you would come

23   out of prison, be deported without any benefit of a halfway

24   house or a drug treatment program, and then you're left to

25   find a treatment program wherever you may end up, and my guess

1  is the programs that may be available on this side of the

2  border are not available on -- in Mexico.  Maybe I'm wrong.

3  Hope I am.  But I would urge, if possible, that you be allowed

4  to participate in the residential drug treatment program.

5          Mr. Jubin, anything further?

6          MR. JUBIN:  Only that I would, for the record, renew

7  all prior objections in the matter for purposes of preserving

8  those objections for an appeal.

9          THE COURT:  Very well.  The Court will persist in its

10  previous rulings.

11          I'm sure that Mr. Molina is grateful that his sister

12  and brother-in-law are present here today at the sentencing or

13  family members have come from Gillette.  Is that correct?

14          MR. JUBIN:  Yes.

15          THE DEFENDANT:  Yes.

16          THE COURT:  All right.  There being nothing further,

17  we'll stand in recess.

18      (Proceedings concluded 3:49 p.m.,

19      July 26, 2013.)

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4          I, JULIE H. THOMAS, Official Court Reporter for the

5    United States District Court for the District of Wyoming, a

6    Registered Merit Reporter and Certified Realtime Reporter, do

7    hereby certify that I reported by machine shorthand the

8    proceedings contained herein on the aforementioned subject on

9    the date herein set forth, and that the foregoing pages

10   constitute a full, true and correct transcript.

11          Dated this 13th day of October, 2013.

12

13

14

15                    _____
                           /s/ Julie H. Thomas

16                      JULIE H. THOMAS
                       Official Court Reporter
17                   Registered Merit Reporter
                     Certified Realtime Reporter
18                       CA CSR No. 9162

19

20

21

22

23

24

25