**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 13, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

SIGIFREDO MOLINA VARELA, a/k/a
Sigi Molina, a/k/a Sigi Varela,

      Defendant - Appellant.

No. 13-8067
(D. Wyoming)
(D.C. No. 2:13-CR-00004-ABJ-2)

---

**ORDER AND JUDGMENT**[*]

---

Before **MATHESON, EBEL** and **McHUGH,** Circuit Judges.

---

      Defendant Sigifredo Molina-Varela appeals his conviction of conspiracy to possess methamphetamine with intent to distribute and distribution of methamphetamine, and possession of a firearm in furtherance of a drug felony. He challenges the district court's order denying his motion to suppress his post-arrest statements, claiming they were not knowing or voluntary. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

# I.   BACKGROUND

## A. *Factual History*

After a two-year investigation into a conspiracy to distribute methamphetamine in the Cheyenne area, the Wyoming Division of Criminal Investigation obtained a warrant to search the apartment occupied by Mr. Molina-Varela and his family. The execution of the search warrant revealed evidence consistent with Mr. Molina-Varela's participation in the conspiracy, including small amounts of methamphetamine,  drug ledgers, and paraphernalia. The officers executing the warrant also discovered multiple firearms. Based on this evidence, the officers arrested Mr. Molina-Varela and transported him to the Campbell County Sheriff's Office.

Later that same day, Special Agents Trevor Budd and Chris McDonald questioned Mr. Molina-Varela about his involvement in the conspiracy. Mr. Molina-Varela claims the district court should have suppressed the inculpatory statements he made during this interview because they were obtained in violation of his constitutional rights. The resolution of this issue requires us to examine the totality of the circumstances surrounding the interview, and therefore we discuss those facts in some detail.[1]

Agents Budd and McDonald questioned Mr. Molina-Varela in a small interview room at the Sheriff's Office, which contained a table and enough chairs for Mr. Molina-Varela and each of the agents to sit. A single door provided access to the room, which

---

[1] We base our recitation of the facts on the district court's findings and on our review of the video of the recorded interview. *See* Supplemental Record on Appeal.

had no windows. During the interview, Mr. Molina-Varela was dressed in a prison-issued jumpsuit, but was not wearing handcuffs or otherwise restrained. The agents wore plain clothes. Neither agent raised his voice or threatened Mr. Molina-Varela during the interview. Mr. Molina-Varela was 43 years old at the time of the interview, and was fluent in English. In total, the interview lasted approximately two hours and twenty-two minutes.

Agent Budd began the interview by asking Mr. Molina-Varela for routine information including his date of birth and social security number. Mr. Molina-Varela provided this information, with little hesitation, from memory. During this initial phase of the interview, Agent Budd volunteered that Mr. Molina-Varela's dog had been placed in protective custody with animal control. Mr. Molina-Varela then inquired about his children, who had been at school when the officers executed the warrant and arrested both Mr. Molina-Varela and the children's mother. This inquiry prompted a conversation regarding the children, during which the agents agreed to attempt to have them placed with Mr. Molina-Varela's stepson.

Agent McDonald then informed Mr. Molina-Varela that law enforcement had been investigating the conspiracy for two years and that they knew "a lot" but didn't know everything. Agent McDonald asked Mr. Molina-Varela for his address and telephone number, as well as telephone numbers for other individuals suspected to be involved in the conspiracy. Agent McDonald also inquired about Mr. Molina-Varela's

immigration status, the number of years he had been in the United States, and how long

he had lived at his current address. Again, Mr. Molina-Varela provided the information

requested without difficulty.

At this point, Agent McDonald indicated that he and Agent Budd wanted to

interview Mr. Molina-Varela to learn more, but that he needed to inform Mr. Molina-

Varela of his rights before proceeding. Consequently, approximately twelve minutes into

the interview, Agent McDonald read aloud from a preprinted waiver of rights form (the

waiver form) to advise Mr. Molina-Varela of his *Miranda*[2] rights:

> You have the right to remain silent. Anything you say can and
> will be used against you in a court of law. You have the right to talk
> to a lawyer and have him present while you are being questioned. If
> you cannot afford to hire a lawyer, one will be appointed to represent
> you at no cost before any questioning if you wish one. You can
> decide at any time to exercise these rights and not answer any
> questions or make any statements. Do you understand each of these
> rights?

Although the waiver form next reads, "Having these rights in mind, do you waive

these rights and desire to make a statement at this time?," R. Vol. 3 at 562, Agent

McDonald deviated from the written text and instead asked, "Having those in mind,

would you still mind talking to me?"

 After Agent McDonald read these warnings, Mr. Molina-Varela asked, "so you

will not help me on any [unintelligible] this?" to which Agent McDonald responded,

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966) (holding that criminal suspects subject
to custodial interrogation must be advised of certain constitutional rights and the
consequences of waiving those rights).

4

"well, that's, that's—no I think we can, we can do something. I'm just saying I can't say—I can't take those charges away [pause] right now." When Mr. Molina-Varela did not respond immediately, Agent McDonald asked if Mr. Molina-Varela would be "willing to answer a few questions" or "talk for a little while longer." Mr. Molina-Varela nodded.

Agent McDonald then asked Mr. Molina-Varela if he could read English. When Mr. Molina-Varela answered affirmatively, Agent McDonald handed Mr. Molina-Varela the waiver form, which he signed in the presence of both agents. The interview continued for approximately two more hours, during which Mr. Molina-Varela made inculpatory statements detailing his role in the conspiracy.

### B. Procedural History

Prior to trial, Mr. Molina-Varela filed a motion in limine to suppress his interview statements on the ground that the waiver of his *Miranda* rights and subsequent statements were uninformed and involuntary. Specifically, Mr. Molina-Varela claimed Agent McDonald coerced him into waiving his rights by using an impermissible promise of leniency, and that he was so impaired by methamphetamine at the time of the interview that it rendered his actions involuntary. After reviewing the video recording of the interview and hearing testimony from Agent McDonald and Mr. Molina-Varela, the district court denied the motion. It concluded there was nothing in Mr. Molina-Varela's behavior to indicate he was unable to make a voluntary confession due to the influence of

methamphetamine and that the statements Mr. Molina-Varela claimed were impermissible promises of leniency were largely "cherry-picked" from the interview. Considering Agent McDonald's statements in context, the district court held they did not render Mr. Molina-Varela's waiver or his subsequent statements involuntary.

At trial, Agent McDonald testified about the interview and described Mr. Molina-Varela's inculpatory statements. The jury convicted Mr. Molina-Varela on all charges and he filed a timely notice of appeal.

## II.     DISCUSSION

Mr. Molina-Varela argues the district court should have suppressed his statements to Agents Budd and McDonald because the agents obtained the statements in violation of his constitutional rights. The admissibility of a defendant's inculpatory statements to law enforcement officers implicates two constitutional protections: the Fifth Amendment right against self-incrimination[3] and the Fourteenth Amendment's requirement that a defendant be afforded appropriate due process. *United States v. Cash*, 733 F.3d 1264, 1280 & n. 12 (10th Cir. 2013), *cert. denied,* ___ U.S. ___, 134 S. Ct. 1569 (2014); *see Dickerson v. United States*, 530 U.S. 438, 433 (2000). To be admissible under the Fifth Amendment, law enforcement officers must inform the defendant of his *Miranda* rights and the defendant must knowingly, intentionally, and voluntarily waive those rights

---

[3] The Fifth Amendment is incorporated and made applicable to the State of Wyoming by the Fourteenth Amendment. *See Withrow v. Williams*, 507 U.S. 680, 689 (1993).

before making the incriminating statements. *See Missouri v. Seibert*, 542 U.S. 600, 607

(2004). Where law enforcement officers have properly advised a defendant of his

*Miranda* rights and obtained a valid waiver of those rights, the Due Process Clause may

nevertheless prohibit the admission of the defendant's inculpatory statements if they were

not made voluntarily. *See Cash*, 733 F.3d at 1280 n.12.

It is unclear whether Mr. Molina-Varela contends his interview statements should

be suppressed because the *Miranda* warnings were insufficient, because his waiver was

not voluntary, or because the statements themselves were involuntary, and therefore,

violate due process. For practical purposes, this uncertainty does not much alter our

analysis because we consider the totality of the circumstances to determine the

voluntariness of both Mr. Molina-Varela's waiver of his *Miranda* rights and the

voluntariness of his subsequent statements. *See Colorado v. Connelly*, 479 U.S. 157,

169–70 (1986) ("There is obviously no reason to require more in the way of a

'voluntariness' inquiry in the *Miranda* waiver context than in the Fourteenth Amendment

confession context."); *Cash*, 733 F.3d at 1280 n. 12 ("[R]egardless of whether we

evaluate the voluntariness of a statement through the lens of Miranda waiver, the

privilege against self-incrimination, or the Due Process Clause, our inquiry is the same—

we consider the totality of the circumstances.").

Accordingly, we first consider the sufficiency of the warnings. We then proceed to

the issue of whether Mr. Molina-Varela's waiver and subsequent statements were

voluntary under the totality of the circumstances. With respect to this second issue, we consider Mr. Molina-Varela's specific claims that the agents engaged in coercive tactics, including "trickery, false promises of leniency and misleading statements, and subterfuge" to induce his waiver. Aplt. Reply Br. 11. Finally, we address Mr. Molina-Varela's contention that he was so impaired by methamphetamine at the time of the interview that his actions were involuntary.

### A. Standard of Review

When reviewing the district court's denial of a motion to suppress, we review legal conclusions de novo and findings of fact for clear error. *United States v. Smith*, 606 F.3d 1270, 1275 (10th Cir. 2010) [hereinafter *Smith*]. We accept the district court's factual findings unless clearly erroneous and consider the evidence in the light most favorable to the district court's determination. *United States v. Lopez*, 437 F.3d 1059, 1062 (10th Cir. 2006). It is the government's burden to show a confession is admissible by a preponderance of the evidence. *Id.* at 1063 (citing *Seibert*, 542 U.S. at 608 n.1).

### B. The Sufficiency of the Miranda Warning

Prior to conducting a custodial interrogation, law enforcement officers must advise the suspect of four specific rights:

> [A suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Florida v. Powell*, 559 U.S. 50, 59–60 (2010) (brackets in original). Mr. Molina-Varela concedes each of these required elements of a *Miranda* warning are contained in the written waiver form that Agent McDonald read and Mr. Molina-Varela signed. Notwithstanding that concession, he claims the *Miranda* warnings were rendered inadequate and misleading when Agent McDonald deviated from the language of the written waiver form and asked, "having those [rights] in mind, would you still mind talking with me?"[4] We disagree.

Nothing in *Miranda* requires an officer to ask specifically if the suspect waives his rights. *See Berghuis v. Thompkins*, 560 U.S. 370, 384–87 (2010) (holding that police are not required to obtain an express waiver of a defendant's right to remain silent under *Miranda* before commencing interrogation and "[W]here the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent."). And the question, "[h]aving those [rights] in mind, would you still mind talking to me?," did not render the warnings misleading. It simply asked whether, despite the just-explained right not to speak, Mr. Molina-Varela would "mind" talking with the agents anyway. *See*

---

[4] Mr. Molina-Varela also claims that his statements should be excluded because Agent McDonald's failure to advise him of his rights at the outset of the interrogation constitutes a direct violation of *Miranda*. We do not address this argument because it was not raised before the district court or argued in Mr. Molina-Varela's opening brief. *See United States v. Holmes*, 727 F.3d 1230, 1237 (10th Cir. 2013) ("[W]e do not permit new arguments on appeal when those arguments are directed to reversing the district court."); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived.").

*Powell*, 559 U.S. at 60, 62–64 (holding that warnings need only reasonably convey to a suspect his *Miranda* rights).

The fact that Agent McDonald handed Mr. Molina-Varela the waiver form after reading it out loud supports our conclusion. The waiver form includes the language Mr. Molina-Varela now complains Agent McDonald omitted from the verbal recitation of rights: an express inquiry as to whether Mr. Molina-Varela agreed to waive his *Miranda* rights. Mr. Molina-Varela executed the written form, thereby indicating his intent to waive the rights described in it and explained by Agent McDonald. Therefore, we conclude that Agent McDonald informed Mr. Molina-Varela of his rights as required by *Miranda*.

### C.  Voluntariness of the Waiver and Inculpatory Statements

Mr. Molina-Varela also argues that his *Miranda* waiver and subsequent statements were involuntary because Agents Budd and McDonald engaged in over twelve minutes of trickery, subterfuge, and false and misleading statements, which amounted to psychological conditioning ploys used to coerce him into waiving his rights. Specifically, he claims the agents misrepresented the strength of the evidence and feigned friendship and kindness by discussing his children and his dog. In addition, Mr. Molina-Varela contends Agent McDonald made an impermissible and misleading promise of leniency. We are not persuaded that any of the aspects of the interrogation identified by Mr. Molina-Varela rendered his waiver or his subsequent statements involuntary.

10

A *Miranda* waiver must be "'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Smith v. Mullin*, 379 F.3d 919, 932 (10th Cir. 2004) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). In determining whether Mr. Molina-Varela's *Miranda* waiver and subsequent statements were voluntary, we examine whether his will was "overborne by the circumstances surrounding the giving of a confession." *Id.* at 934. This requires us to assess the totality of the circumstances. *Id.* Factors relevant to this assessment include the personal characteristics of the accused and the details of the interrogation, including: the suspect's age, intelligence, and education; whether the suspect was informed of his or her rights; the length and nature of the suspect's detention and interrogation; and the use or threat of physical force against the suspect. *Id.*

### 1. Exaggeration of the Evidence and Feigned Friendliness

Under this standard, we can easily dispose of Mr. Molina-Varela's first two allegations of coercive conduct. Agents Budd and McDonald did not misrepresent or exaggerate the evidence that implicated Mr. Molina-Varela in a conspiracy to distribute methamphetamine. *Cf. Lopez*, 437 F.3d at 1065 (concluding that a confession was involuntary where, in addition to promising leniency, agents misrepresented the strength of the evidence); *Clanton v. Cooper*, 129 F.3d 1147, 1158–59 (10th Cir. 1997) (recognizing that a reasonable officer should have known that misrepresentations, combined with promises of leniency, were more likely to render a confession

involuntary). To the contrary, Agent Budd's and Agent McDonald's representations to Mr. Molina-Varela were true; they had been working the case for over two years and knew enough about Mr. Molina-Varela's involvement in the conspiracy to obtain a search warrant for his apartment, which when executed yielded methamphetamine, a drug ledger, and other paraphernalia.

Agents Budd and McDonald also acted permissibly in discussing the placement of Mr. Molina-Varela's children and the location of his dog. Mr. Molina-Varela initiated the conversation about his children and Agents Budd and McDonald merely agreed to facilitate their placement with a family member. Nothing about Agent Budd's and Agent McDonald's general politeness, friendliness, or helpfulness during the interview was coercive. *Compare Spano v. New York*, 360 U.S. 315, 323 (1959) (holding that using a patrolman who was the suspect's childhood friend to convince the suspect to confess so that the patrolman would not be in trouble from his superiors was coercive), *with United States v. Posada-Rios*, 158 F.3d 832, 866 (5th Cir. 1998) (exhibiting sympathy to create an atmosphere of trust does not demonstrate prohibited police overreaching). Thus, we are not persuaded by Mr. Molina-Varela's claims that Agents Budd and McDonald impermissibly exaggerated the evidence or feigned friendship.

### 2.  Promise of Leniency and Misleading Statements

Mr. Molina-Varela next contends that he was coerced into waiving his *Miranda* rights and incriminating himself during the interview by Agent McDonald's statement "I

12

think we can, we can do something. I'm just saying I can't say—I can't take those charges away [pause] right now." According to Mr. Molina-Varela, this statement is an impermissible and misleading promise of leniency that rendered his waiver and subsequent inculpatory statements involuntary. In rejecting this argument, we first determine that Agent McDonald did not make an impermissible promise of leniency, but that the statement was somewhat misleading. But we conclude that even treating Agent McDonald's statement as a promise of leniency, and weighing the misleading nature of the statement, it did not overcome Mr. Molina-Varela's will and render his waiver and confession involuntary.

"Under Supreme Court and Tenth Circuit precedent, a promise of leniency is relevant to determining whether a confession was involuntary and, depending on the totality of the circumstances, may render a [waiver or] confession coerced." *Lopez*, 437 F.3d at 1064 (quoting *Clanton*, 129 F.3d at 1159); *accord Clanton*, 129 F.3d at 1159 (discussing the effect of an alleged promise of leniency on the voluntariness of the defendant's confession in the context of a 42 U.S.C. § 1983 claim); *United States v. Roman-Zarate*, 115 F.3d 778, 780, 782–84 (10th Cir. 1997) (examining whether a promise of leniency rendered a confession involuntary). For example, in *Lopez*, we determined that law enforcement officers had made an impermissible promise of leniency where the agent set out four pieces of paper marked with the terms "murder," "mistake," "60," and "6," and then told the defendant "'if you cooperate, you know, . . . you could

be looking at six years. And if you don't cooperate and give us answers, you could be looking at 60 years.'" 437 F.3d at 1061, 1065. We explained that the agent had used the papers to make a specific and compelling promise that the defendant would spend 54 fewer years in prison if he confessed to killing the victim by mistake, and then reinforced the promise by relating stories of other suspects who had received lighter sentences after confessing to killing by mistake. *Id.* at 1065. The promise was not a "limited assurance" that is permissible as an interrogation tactic; it was "of the sort that may indeed critically impair a defendant's capacity for self-determination." *Id.* Upon concluding that the agent had made an impermissible promise of leniency, we next considered whether under the totality of the circumstances, the defendant's statements were coerced and therefore involuntary. Noting that the agent had also misrepresented the strength of evidence against the defendant and threatened to prosecute the defendant's mother for perjury if she provided alibi testimony, we held that the defendant's inculpatory statements were involuntary, and therefore, inadmissible, even though the agent had informed the defendant of his *Miranda* rights. *Id.* at 1061, 1065.

Turning to the facts of this case, unlike the specific promise of a 54-year reduction of sentence we found to be compelling in *Lopez*, Agent McDonald's statement was vague and noncommittal. He did not describe any specific benefit Mr. Molina-Varela would enjoy if he cooperated or any particular penalty he would face if he did not. Therefore, Agent McDonald's statement did not constitute a promise of leniency.

14

However, even if the statement could be construed as a promise of leniency, we have no trouble concluding that, under the totality of the circumstances, it was not so compelling as to overcome Mr. Molina-Varela's will. Unlike the statement in *Lopez*, Agent McDonald's statement was too vague and generic to have critically impaired Mr. Molina-Varela's ability to evaluate whether or not to waive his *Miranda* rights. It simply reinforced the obvious fact of which Mr. Molina-Varela was clearly aware—that cooperation with law enforcement officers could be beneficial. In fact, Agent McDonald made the statement in response to Mr. Molina-Varela's own attempt to negotiate a more favorable outcome in exchange for his cooperation. *See, e.g.*, *United States v. Toles*, 297 F.3d 959, 967 (10th Cir. 2002) (holding a confession was voluntary and noting that it was the defendant who raised the possibility of a benefit); *see generally* Wayne R. LaFave et al., 2 Crim. Proc. § 6.2(c) (3d ed.) (collecting cases and concluding that some courts have held that promises of leniency are less coercive where they are made in response to a solicitation from the accused).

As for Mr. Molina-Varela's argument that Agent McDonald's statement was misleading, we agree that it may have implied inaccurately that Agent McDonald had the power to take Mr. Molina-Varela's charges away. *Cf. United States v. Lewis*, 24 F.3d 79, 82 (10th Cir. 1994) (a statement was voluntary where the law enforcement officer promised to make the defendant's cooperation known to the United States Attorney's Office but told the defendant that he himself could make no deals); *United States v. Lux*,

15

905 F.2d 1379, 1382 (10th Cir. 1990) (finding that a confession was voluntary where the law enforcement officer allegedly told the appellant she could either testify or be a codefendant, but that only the United States Attorney could help her). But we cannot agree that the statement was sufficiently misleading to overcome Mr. Molina-Varela's will. Balancing the effect of the misleading inference against the totality of the circumstances, including other details of the interview and Mr. Molina-Varela's personal characteristics, we conclude that his waiver and subsequent inculpatory statements were voluntary.

The fact that Agent McDonald properly advised Mr. Molina-Varela of his *Miranda* rights and Mr. Molina-Varela expressly waived those rights by executing the written waiver form is "strong proof" that Mr. Molina-Varela's waiver and confession were voluntary. *United States v. Amos*, 984 F.2d 1067, 1074 (10th Cir. 1993); *see Seibert*, 542 U.S. at 609 ("maintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina, and litigation over voluntariness tends to end with the finding of a valid waiver"); *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984) ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare.").

Moreover, Mr. Molina-Varela was not subject to physical punishment or the use or threat of force. Agents Budd and McDonald did not raise their voices, make any threats,

16

or act in any way that was intimidating. As discussed, Agents Budd and McDonald at all times during the interview were polite and friendly. Both agents were dressed in plain clothes and sat throughout the majority of the interview. The interview room, although small, was large enough for everyone to sit comfortably. In fact, Mr. Molina-Varela appeared to be relatively relaxed and comfortable throughout the interview. He wore a jumpsuit but was not handcuffed or otherwise restrained. *See Smith*, 606 F.3d at 1277 (holding that a waiver was voluntary where the interview took place in a room large enough to accommodate adequately the interviewers, the suspect was not handcuffed during the interview, and there was no indication that he was treated impolitely or touched forcefully while being interviewed).

There is also nothing about the duration of the detention and interview that suggests coercion. The interview occurred on the same day as Mr. Molina-Varela's arrest and lasted less than two and a half hours. *See Berghuis*, 560 U.S. at 387 (holding that an interrogation that lasted three hours was not coercive); *Smith*, 606 F.3d at 1277 (holding that a waiver was voluntary where the suspect had been under arrest for approximately three hours prior to questioning). Furthermore, at the time of the interview, Mr. Molina-Varela was a 43-year-old adult, who spoke and understood English well. He appeared intelligent, and nothing in the record suggests otherwise. And Mr. Molina-Varela is no

stranger to the criminal justice system; therefore "[t]he concepts encompassed by *Miranda* were not foreign to him." *Mullin*, 379 F.3d at 934.[5]

The totality of the circumstances do not indicate that Mr. Molina-Varela's waiver and subsequent confession were anything but the product of an informed and voluntary choice. Agents Budd and McDonald did not impermissibly exaggerate the evidence or feign friendship. Nor was Agent McDonald's statement an impermissible promise of leniency. But even if we were to treat it as such, and also consider the misleading nature of the statement, it was not so compelling or misleading that it overcame Mr. Molina-Varela's will under the totality of the circumstances. For these reasons, we conclude that Mr. Molina-Varela's waiver and subsequent statements were voluntary.

### 3.  Mr. Molina-Varela's methamphetamine use did not render his *Miranda* waiver invalid.

Finally, Mr. Molina-Varela claims that his waiver was invalid because he was high on methamphetamine at the time of the interview. A state of intoxication does not automatically render a waiver invalid. *Smith*, 606 F.3d at 1276; *United States v. Augustine*, 742 F.3d 1258, 1265 (10th Cir.), *cert. denied*, 134 S. Ct. 2155 (2014) ("The mere fact of drug or alcohol use will not suffice to overcome evidence showing that the defendant was sufficiently in touch with reality so that he knew his rights and the consequences of abandoning them." (internal quotation marks omitted)). Instead, the

---

[5] The record reveals that Mr. Molina-Varela had been previously arrested on charges of DUI; aggravated assault and use of a firearm; theft of service and theft by unlawful taking; and for failure to appear.

question remains "whether a [suspect's] will was overborne by the circumstances surrounding the giving of a confession." *Smith*, 606 F.3d at 1276–77; *United States v. Curtis*, 344 F.3d 1057, 1066 (10th Cir. 2003) (examining whether the impairment was "such that the confession was not voluntary and that Defendant was not operating under his own free will." (brackets omitted)). Here, that question is easily answered in the negative.

The district court made factual findings that Mr. Molina-Varela was not so impaired by methamphetamine use that he could not make a voluntary confession. Indeed, the court found there were no "obvious" signs that Mr. Molina-Varela was under the influence of methamphetamine at all. Instead, the court observed that he appeared at all times during the interview to be lucid, and was "alert yet relaxed." He spoke clearly and responded to Agent Budd's and Agent McDonald's questions appropriately and at times asked them clarifying questions. He also exhibited concern for the situation and for his children. Our review of the video recording of the interview establishes that these findings are not clearly erroneous. Thus, we conclude that Mr. Molina-Varela was not so impaired by his methamphetamine use that his *Miranda* waiver was invalid.

19

### III.    CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision to admit Mr.

Molina-Varela's post-arrest statements.

ENTERED FOR THE COURT


Carolyn B. McHugh
Circuit Judge

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**
**OFFICE OF THE CLERK**
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker
Clerk of Court

August 13, 2014

Chris Wolpert
Chief Deputy Clerk

Mr. Edwin Stanton Wall
Wall Law Offices
650 Boston Building
9 Exchange Place
Salt Lake City, UT 84111

**RE:**     **13-8067, United States v. Molina Varela**
              District docket: 2:13-CR-00004-ABJ-2

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 12 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker

Elisabeth A. Shumaker
Clerk of the Court

cc:      Stuart S. Healy III


EAS/ad